**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1684
_____

CASEY DOOLEY,

Appellant

v.

JOHN WETZEL; KEVEN KAUFMAN;
RICHARD A. GOSS

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No.: 3-18-cv-01310)
District Judge: Honorable James M. Munley

_____

Argued November 12, 2019

(Opinion Filed: April 27, 2020)

Before: JORDAN, SCIRICA, and RENDELL, <u>Circuit Judges</u>

Amir H. Ali
Roderick & Solange MacArthur Justice Center
777 6th Street N.W.
11th Floor
Washington, DC 20001

Bradley N. Garcia **(Argued)**
Meaghan M. VerGow
O'Melveny & Meyers
1625 I Street N.W.
Washington, DC 20006
*Counsel for Appellant*

Josh Shapiro
J. Bart DeLone
Michael J. Scarinci **(Argued)**
Office of Attorney General of Pennsylvania
Strawberry Square
Harrisburg, PA 17120
*Counsel for Appellees*

---

O P I N I O N

---

**RENDELL**, Circuit Judge:

Appellant Casey Dooley challenges the District Court's *sua sponte* dismissal of his Complaint without leave to amend

as well as the Court's declaration that the dismissal constituted a "strike" for purposes of the Prison Litigation Reform Act (PLRA). Because we agree that the District Court erred in both respects, we will vacate the District Court's Order and remand for further proceedings.

## I. Background

This case arises out of Dooley's *pro se* challenge to the refusal of the Department of Corrections (DOC) to assign him the mental classification associated with the greatest mental health resources. Specifically, Dooley argues that he should be listed as a D Stability Code inmate and receive the mental health resources that accompany that status. The DOC Officials' refusal to designate him D Stability Code, in Dooley's view, violated his Eighth Amendment rights. On appeal, Dooley contends that the District Court erred when it dismissed his Eighth Amendment claim and that the Court at least should have granted him leave to amend. Dooley also argues that the Court erred when it determined that the dismissal of the suit constituted a "strike" under the PLRA. We discuss each issue in turn.

### a. D Stability Code and Guilty but Mentally Ill Inmates

The D Stability Code that Dooley seeks applies to inmates who have the most significant mental health needs and entitles them to the greatest amount of mental health resources available. Pa. DOC Reg. § 13.8.1(1)(B)(2)(g)(1)(d). DOC policy specifies that certain inmates should be listed on the "D Roster," including those who have been found guilty but

3

mentally ill (GBMI). Pa. DOC Reg. § 13.8.1(2)(A)(1)(a)(4)(d), (J)(3)(a).

When a jury renders a GBMI verdict in Pennsylvania, the court must hear testimony and make a finding as to whether the defendant is, at the time of sentencing, "severely mentally disabled," requiring treatment under the Mental Health Procedures Act. 42 Pa. Cons. Stat. § 9727(a). Some aspects of DOC policy differentiate between inmates found GBMI *and* determined to be severely mentally disabled (Category I) and those found GBMI but determined *not* to be severely mentally disabled (Category II). *See* Pa. DOC Reg. § 13.8.1(2)(J)(1)(b). All GBMI inmates must be placed on the D Roster when they first arrive at the DOC and subsequently receive regular psychiatric evaluation. *Id.* at § 13.8.1(2)(J)(3).

### b. Dooley's GBMI Status and Grievances Seeking D Stability Code

The parties' conflict turns in part on a disagreement, reflected throughout the grievance process, about whether Dooley should be considered a GBMI inmate. Although the outcome of that factual dispute does not dispose of the questions before us, the issue warrants some explanation for the sake of context.

In 2002, Dooley was tried for five counts of attempted murder, five counts of aggravated assault, possession of an instrument of a crime, and reckless endangerment of another person, and the jury found him GBMI on all charges. Dooley has cited the jury's GBMI finding in grievances requesting the D Stability Code designation as well as his Complaint. On August 13, 2017, Dooley filed a grievance complaining that he

4

was "not being treated as a D Code," despite having been found guilty but mentally ill by the jury. App. at 149. He noted that he had previously written staff about the issue. He submitted a second grievance on August 24, in which he claimed that an official told him in an annual review that, because the jury's verdict had been changed, he was not GBMI and therefore was not a D Stability Code. Dooley filed the grievance to object to this determination, contending the jury's GBMI finding should have been credited.

Although there is no dispute that the jury found Dooley GBMI, the DOC Officials repeatedly represented to Dooley that his court documents no longer identified him as GBMI, and that he therefore should not be labeled D Stability Code. It is unclear what the sentencing judge determined or what evaluations were performed, as that aspect of the record has not been provided to us. The only portion of the sentencing transcript before us consists of three pages that Dooley attached to his Complaint, in which defense counsel briefly referenced the jury's GBMI verdict, and the sentencing court noted that Dooley "needs some psychiatric assistance," before going on to state Dooley's sentence without any specific reference to mental health treatment. App. at 62–63. Otherwise, all we know is what the various DOC officials have represented as noted below.

On August 29, DOC Official Richard Goss denied the first grievance. Goss wrote:

> I have reviewed your claims in this grievance and we have discussed this at length previously. I have also spent considerable time researching

5

this for you. You are not GBMI nor a D stability Code.

You were found Guilty But Mentally Ill by the jury. At that time, the judge entered a temporary sentencing order pending a Psychiatric evaluation to address the GBMI. The result of the evaluation did not support the GBMI designation and it was deleted from the final order.

This grievance has no merit and is denied.

App. at 151. On appeal, DOC Official Kevin Kauffman upheld this decision. He reiterated that, although a jury found Dooley GBMI, the "judge entered a temporary sentencing order pending a psychiatric evaluation to address the GBMI verdict. The evaluation did not support the GBMI designation and it was deleted from the final order." App. at 152. He then concluded, "you are not a stability D inmate" and recommended that Dooley address any concerns to the sentencing judge. App. at 152.

Dooley appealed to the Chief Grievance Officer, Dorina Varner, who upheld the previous decisions. Her response followed the recommendation of the Acting Director of the Psychology Office, who noted that "Inmate Dooley's court documents were reviewed and found to not identify him as 'Guilty but Mentally Ill.'" App. at 141. Chief Grievance Officer Varner's decision read:

It has been found that your court documents were reviewed and found to not identify you as

"Guilty but Mentally Ill". Because you do not like or agree with the interpretation of your court documents does not give any further merit to your claims. If you do not agree with the court documents, this should be addressed with the Judge and the court. Therefore, this office upholds the responses provided to you and your requested relief is denied.

App. at 140. The denials of Dooley's grievance and appeals seeking D Stability Code classification were thus consistently premised on his purported lack of GBMI status.

The District Court seems to have credited the DOC Officials' assertion that the GBMI designation was "deleted." App. at 5. Dooley, however, maintains that his GBMI status continued to apply and supported his claim that he was entitled to the more intensive mental health treatment offered to D Stability Code inmates. On appeal, the DOC Officials do not argue that the sentencing court removed the GBMI finding altogether; they merely assert that the court found Dooley was not severely mentally disabled under 42 Pa. Cons. Stat. § 9727(a).

Given the foregoing facts, Dooley's contention that he retained the GBMI designation, at least to some extent, is not baseless. If, as the DOC Officials contend, a jury found Dooley GBMI and a sentencing judge concluded that Dooley was not severely mentally disabled, that would not have eliminated his GBMI status. Under current DOC policy, it would have placed him in Category II of GBMI inmates, which would have required that he be placed on the D Roster and that he subsequently receive regular psychiatric evaluation. *See* Pa. DOC Reg. § 13.8.1(2)(J)(1)(b)(2), (3). Although the current

7

DOC policies may not have been in effect at the time of Dooley's initial incarceration, they support the view that, even if the sentencing judge found him not severely mentally disabled, his GBMI verdict did not disappear or lose all significance.[1]

### c. Complaint

In May 2018, Dooley filed a *pro se* complaint in the Court of Common Pleas for Huntingdon County against Goss, Kauffman, and John Wetzel, the Secretary of DOC. The Complaint alleged, under 42 U.S.C. § 1983, that the DOC Officials violated Dooley's Eighth Amendment rights through deliberate indifference to his serious mental health needs. The Complaint cited the GBMI verdict as a primary reason why Dooley should be categorized as D Stability Code and entitled

---

[1] The record does not indicate specifically what policies for mental health classification were in place at the time of Dooley's incarceration in 2002. As Dooley points out, however, the Pennsylvania DOC adopted the current mental health classification system, which includes the D Stability Code, in 2015 in response to a Department of Justice investigation into the DOC's mistreatment of mentally ill inmates, including problems with classification. *See* Letter from David Hickton, U.S. Attorney, W.D. Pa. to Tom Corbett, Governor of Pa. (May 31, 2013) (announcing statewide expansion of investigation), *available at* https://www.justice.gov/sites/default/files/crt/legacy/2013/06/03/cresson_findings_5-31-13.pdf; Letter from David Hickton, U.S. Attorney, W.D. Pa. to Tom Corbett, Governor of Pa. (Apr. 14, 2016) (announcing decision to close investigation in light of improvements by DOC), *available at* https://www.justice.gov/opa/file/841061/download.

to the resources associated with that status. Dooley also attached to the Complaint pages from the sentencing hearing transcript, which included a remark by the judge about Dooley's need for psychiatric assistance. The Complaint stated that Dooley "has suffered agonizing mental health pain and trauma and serious depression, lack of sleep, being paranoid throughout the day, nightmares, and physical abuse because of his mental illness." App. at 49. It noted that Dooley "suffers from acute/serious depression sometimes bordering on manic-depression" requiring treatment. App. at 50.

Dooley claimed that, despite his mental health problems, the DOC Officials refused to provide him adequate mental health treatment, specifically the treatment afforded to D Stability Code inmates. This allegedly caused him to "suffer[ ] severe harm." App. at 48. He noted that, as the basis for refusing to provide him D Code treatment, the officials simply asserted that he was not found GBMI because the sentencing judge changed the verdict. By denying him adequate mental health treatment, the Complaint contended, the DOC officials were deliberately indifferent to Dooley's serious medical needs in violation of his Eighth Amendment rights.

### d. Federal Court Proceedings

Shortly after Dooley filed his Complaint, the DOC Officials removed the action to federal court, and the case was referred to Magistrate Judge Joseph F. Saporito, Jr. The DOC Officials quickly filed a Motion to Dismiss or for Summary Judgment. They argued only that Dooley had failed to exhaust his administrative remedies.

9

In his Report and Recommendation (R&R), the Magistrate Judge concluded that Dooley did exhaust his administrative remedies but recommended the District Court dismiss the Complaint as frivolous and for failure to state a claim. He concluded that Dooley had alleged no personal involvement by any of the defendants, finding the review and/or denial of a grievance insufficient to show personal involvement. The R&R recommended that the District Court *sua sponte* dismiss the Complaint and that it do so without leave to amend because amendment would be futile. The R&R also included a "Three Strikes Warning." App. at 36–37. That warning stated that adoption of the recommendation to dismiss the suit would result in a strike under 28 U.S.C. § 1915(g) and that accumulation of three strikes would preclude Dooley from proceeding *in forma pauperis* in subsequent cases.

Both parties objected to the R&R, but the District Court overruled the objections. The Court first considered and overruled Dooley's objections. It found that Dooley failed to state an Eighth Amendment violation because he did not sufficiently allege that he had been deprived of "life's necessities," such as "food, clothing, shelter, medical care and reasonable safety." App. at 9–10 (citations omitted). The Court further concluded that the Complaint was insufficiently detailed and did not particularly allege the DOC Officials' personal involvement. It then declined to consider the officials' objections as to exhaustion, as they were rendered moot because of the dismissal of the Complaint on the merits. The Court adopted the R&R's recommendation to deny the Motion to Dismiss or for Summary Judgment but to *sua sponte* dismiss the Complaint without leave to amend as frivolous and

for failure to state a claim.[2] The Court did not address whether leave to amend would be inequitable or futile. The Order included a statement that the dismissal as frivolous and for failure to state a claim constituted a "strike" under 28 U.S.C. § 1915(g).

## II.     Discussion

Dooley raises multiple challenges to the District Court's rulings. First, Dooley contends that the District Court erred when it dismissed his Eighth Amendment claim and that, at a minimum, the Court should have granted leave to amend the Complaint. Next, Dooley argues that the Court lacked the authority to determine whether the dismissal of the suit constituted a "strike" under the PLRA and that, even if it had such authority, the Court erroneously labeled his suit a "strike." We address each challenge in turn.[3]

---

[2] The District Court predominantly applied the standard for evaluating whether a pleading has stated a claim, but rather than simply concluding that Dooley's Complaint failed to state a claim, the Court further declared that the Complaint was "frivolous under the law." App. at 10. The Court's Order purported to dismiss the Complaint "as frivolous," but another part of the Order referred to "the dismissal of this action as frivolous and for failure to state a claim." App. at 3. The Memorandum cited the statutory provisions for both grounds. We therefore assume that the District Court dismissed the Complaint both as frivolous and for failure to state a claim.

[3] The District Court had jurisdiction over Dooley's claim pursuant to 28 U.S.C. §§ 1331 and 1441. We have jurisdiction under 28 U.S.C. § 1291 over the Court's final decision dismissing the Complaint.

### a. Dismissal of Dooley's Eighth Amendment Claim

We first address the District Court's decision to dismiss Dooley's Complaint as frivolous and for failure to state a claim under 28 U.S.C. §§ 1915A, 1915(e)(2) and 42 U.S.C. § 1997e(c). Although we agree that Dooley failed to adequately state a claim against these specific individuals under 42 U.S.C. § 1983, we do not find the Complaint so baseless as to be frivolous. Further, the District Court made no finding as to whether amendment would be inequitable or futile, and thus erred in dismissing the Complaint without leave to amend.

We exercise plenary review over the District Court's *sua sponte* dismissal of the Complaint under 28 U.S.C. §§ 1915A, 1915(e)(2), and 42 U.S.C. § 1997e(c). It is well settled that we consider dismissals for failure to state a claim *de novo*. *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000); *see also Castleberry v. STI Grp.*, 863 F.3d 259, 262–63 (3d Cir. 2017). We apply the same standard to the Complaint's dismissal as frivolous. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). In assessing the Complaint, we are mindful of our "obligation to liberally construe a *pro se* litigant's pleadings," *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011), particularly where the *pro se* litigant is imprisoned. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013).

Dooley's Complaint failed to state an adequate § 1983 claim because it did not demonstrate personal involvement by any of the defendants in the complained-of conduct. In advancing any § 1983 claim against prison officials, a plaintiff may not rely solely on a *respondeat superior* theory of liability.

12

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, a plaintiff must aver facts to show the defendants' personal involvement in the alleged misconduct. *Id.* Personal involvement requires particular "allegations of personal direction or of actual knowledge and acquiescence." *Id.*

Here, the Complaint does not specifically allege personal involvement by any of the defendants. The only evidence to which Dooley points to show Wetzel knew of Dooley's mental health needs is the fact that he sent Wetzel a copy of documents reflecting his GBMI verdict and request for D Code designation and Wetzel's lack of any response or action. But this evidence does not demonstrate the personal direction or actual knowledge required under *Rode*, and Dooley's allegations of Wetzel's involvement are insufficient. *See Rode*, 845 F.2d at 1207–08. Similarly, as to Kauffman and Goss, the only involvement alleged in the Complaint is their review and denial of Dooley's grievance. We therefore agree that Dooley failed to state a claim and conclude that the District Court did not err in dismissing the Complaint on that ground.

The District Court erred, however, when it dismissed the Complaint as frivolous and without leave to amend. It is well understood that "a complaint filed *in forma pauperis* is not automatically frivolous . . . because it fails to state a claim." *Neitzke v. Williams*, 490 U.S. 319, 331 (1989); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112 (3d Cir. 2002). Rather, a claim is frivolous only where it depends "on an 'indisputably meritless legal theory' or a 'clearly baseless' or 'fantastic or delusional' factual scenario." *Mitchell*, 318 F.3d at 530 (quoting *Neitzke*, 490 U.S. at 327–28). Here, Dooley advanced a valid legal theory, and particularly given

13

our liberal *pro se* pleading standards, the factual scenario alleged was not clearly baseless or delusional.

Dooley's Complaint, construed liberally, laid out a plausibly valid theory for a § 1983 Eighth Amendment claim. Prison officials violate an inmate's Eighth Amendment rights when they are deliberately indifferent to an inmate's serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering," and a doctor has diagnosed the condition, or the need for treatment would be obvious to a lay person. *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Officials are deliberately indifferent to such needs when they are actually aware of a substantial risk of serious harm and disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Dooley's Complaint turned on this Eighth Amendment legal theory, and the facts supporting it were not baseless, fantastic, or delusional. *See Mitchell*, 318 F.3d at 530.

The factual scenario in Dooley's Complaint alleged a medical need in the form of serious mental health problems. Dooley's claimed depression, pain, trauma, lack of sleep, nightmares, paranoia, and related mental health issues could constitute the requisite serious medical need if diagnosed or if the need for greater treatment would be obvious to a lay person. *See Palakovic v. Wetzel*, 854 F.3d 209, 222, 227 (3d Cir. 2017); *Inmates of the Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979). The jury's GBMI finding and the sentencing judge's comment about his mental health needs may show that, at one point, Dooley's mental health problems were obvious to

14

lay people.[4]  Additional facts in an amended complaint might provide greater specificity necessary to demonstrate a serious medical need.  Thus, the currently alleged facts are not so clearly baseless as to make the claim frivolous.

Similarly, if the prison officials were actually aware or knew of a substantial risk of serious harm when they allegedly failed to provide Dooley with D Code resources, and they disregarded that risk, then that could constitute deliberate indifference to a serious medical need.  *See Farmer*, 511 U.S. at 837.  Dooley did allege inaction on the part of the DOC Officials in the face of his repeated complaints about inadequate mental health treatment.  He alleged that the officials simply told him that he was not GBMI and therefore not a D Stability Code inmate.  We do not know whether the

---

[4] In arguing that Dooley cannot state an Eighth Amendment claim, Appellees as well as the Magistrate Judge have emphasized that the jury's GBMI finding is not a medical diagnosis and does not operate as a legal requirement of specific mental health treatment.  This misunderstands the relevance of the GBMI verdict.  The fact that the GBMI finding may not alone establish a serious medical need or give rise to an obligation to provide specific treatment does not preclude its relevance as a fact that demonstrates the obviousness and seriousness of Dooley's specifically pled psychiatric problems.  In addition to demonstrating that a jury recognized Dooley's mental illness, the GBMI verdict shows that Dooley, even if not found severely mentally disabled, had mental health needs that were serious enough to require—under current DOC policy—at least temporary D Code status and regular psychiatric evaluation.  *See* Pa. DOC Reg. § 13.8.1(2)(J)(1)(b)(2), (3).

officials ever considered whether Dooley was receiving appropriate mental health care or provided further evaluation to determine what level of treatment Dooley required.[5] Officials became aware of his contention that he required D Stability Code treatment at least by the time Dooley availed himself of the grievance process. Goss further acknowledged involvement and knowledge of the situation beyond his role in the grievance process, and Dooley's objections to the R&R raised new facts about the officials' awareness of his situation and failure to intervene. Although the Complaint, as pled, is lacking specific facts regarding the officials' actions or inaction to show deliberate indifference, additional detail could satisfy that standard. The factual scenario described by Dooley, particularly if he were permitted to amend his Complaint, could support a legally valid theory for an Eighth Amendment claim. The District Court therefore should not have dismissed the Complaint as frivolous and instead should have permitted Dooley to amend.

Moreover, the Court made no finding that amendment would be inequitable or futile. We have held that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile." *Grayson*, 293 F.3d at 108, 110; *see also Shane v. Fauver*, 213

---

[5] The DOC Officials repeatedly emphasize that "the jury's nearly 20-year-old GBMI verdict" cannot be equated "with a current diagnosis by a doctor." Appellees' Br. at 24. But the same would be true of a sentencing judge's nearly 20-year-old determination that a defendant was not "severely mentally disabled" so as to need continuing treatment. Whether or not Dooley needed D Stability Code treatment in 2002 does not determine the appropriateness of such treatment now.

F.3d 113, 116 (3d Cir. 2000).[6] That determination generally lies within the discretion of the District Court, and we thus review a district court's decision not to grant leave to amend for abuse of discretion. *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010); *Grayson*, 293 F.3d at 108. We have held, however, that "outright refusal to grant the leave *without any justifying reason* [*i.e.*, inequity or futility] . . . is not an exercise of discretion; it is merely abuse of that discretion." *Grayson*, 293 F.3d at 108 (emphasis added) (alteration in original). Here, the District Court engaged in no discussion about whether amendment would be inequitable or futile before adopting the R&R's recommendation to dismiss without leave to amend.[7] We conclude that amendment would not be clearly futile, and the District Court should have

---

[6] Appellees argue that the District Court implicitly found amendment futile when it determined the claim to be frivolous. We have noted that "dismissals of frivolous claims do not require leave to amend due to the long tradition of denying leave to amend . . . when amendment is inequitable or futile." *Grayson*, 293 F.3d at 112–13. But where, as here, the Complaint was properly dismissed, not as frivolous, but for failure to state a claim, plaintiffs "are entitled to amend their complaint unless doing so would be inequitable or futile." *Id.* at 111.

[7] The R&R determined that leave to amend was not appropriate because it found the Complaint "legally frivolous" and because the GBMI finding serves as a "legally operative factual finding, not a medical diagnosis." App. at 35–36. As noted above, we conclude that Dooley's Complaint is not legally frivolous.

17

permitted Dooley to amend the Complaint.  We will therefore vacate its order and remand for further proceedings.[8]

> ### b. *Determination that the Dismissal Constitutes a PLRA "Strike"*

Dooley next objects to the District Court's determination that the dismissal of his Complaint amounted to a "strike" under the Prison Litigation Reform Act (PLRA), specifically 28 U.S.C. § 1915(g).  We exercise "plenary review with respect to the proper interpretation of the PLRA and its three strikes rule." *Millhouse v. Heath*, 866 F.3d 152, 156 (3d Cir. 2017).  Dooley contends that the District Court lacked the authority to prospectively label the dismissal a strike under the PLRA.  We agree.

In examining whether the PLRA allows District Courts to prospectively—at the time of dismissal—label a dismissal a "strike" for purposes of future litigation, we turn first to the language of the statute.  28 U.S.C. § 1915(g) reads:

> **In no event shall a prisoner bring a civil action** or appeal a judgment in a civil action or proceeding under this section **if the prisoner has, on 3 or more prior occasions,** while

---

[8] We have not considered Appellees' exhaustion arguments, which they raised again on appeal, because the District Court did not reach them.  Nothing in our decision today, however, prevents the District Court from revisiting the exhaustion issue on remand.

18

incarcerated or detained in any facility, **brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted**, unless the prisoner is under imminent danger of serious physical injury.

(emphasis added). This language contemplates a prisoner who attempts to bring a suit after having had three *prior* suits dismissed. It thus envisions a determination at the time of the subsequent suit, in which a future district court evaluates whether "prior" suits "brought" by the same plaintiff were dismissed on enumerated grounds. *Id.*

To interpret the statute otherwise would run afoul of Article III's case or controversy requirement. Under Article III, a "claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). At the time of the dismissal of Dooley's action, the question of whether that dismissal constituted a strike under § 1915(g) was premature. It had no immediate consequence because Dooley may never again seek to file a lawsuit. The question is not ripe for adjudication unless or until he seeks to file a fourth suit *in forma pauperis*. *Deleon v. Doe*, 361 F.3d 93, 95 (2d Cir. 2004); *Lucien v. Jockisch*, 133 F.3d 464, 469 n.8 (7th Cir. 1998).

19

Leaving the § 1915(g) strike determination to a future court where the issue is squarely presented further avoids the risk that dismissing courts will make haphazard or erroneous determinations to which subsequent courts might defer. *Deleon*, 361 F.3d at 95 n.1. Appellees contend that strike determinations are straightforward, requiring no briefing and carrying little to no risk of harm from erroneous decisions. That not only misses the point but is in itself questionable. A strike carries great significance, and the gratuitous calling of a strike as happened here can clearly be damaging later on. Only when the strike question has an immediate impact should a court rule on the issue, with the benefit of briefing by the parties if necessary. The possibility for error regarding this important issue is greatly reduced before a future court considering the strike question at a moment when it carries immediate significance.[9] This practical reality reinforces the natural reading of the statute, requiring that later courts make the strike determination only when the issue has become ripe

---

[9] Here, the District Court did, in fact, err in determining that the dismissal amounted to a strike under the PLRA. Dooley brought his suit in state court and the DOC Officials *removed* the suit to federal court, but the PLRA speaks only to suits *brought* in *federal* court. The statute applies to prisoners who "on 3 or more prior occasions . . . *brought an action or appeal in a court of the United States* that was dismissed" on an enumerated ground. 28 U.S.C. § 1915(g) (emphasis added). We have held that, under the PLRA, "a prisoner has 'brought an action' when he tenders or submits his complaint to the court." *Brown v. Sage*, 941 F.3d 655, 661 (3d Cir. 2019). Dooley submitted his Complaint to the state court, not to "a court of the United States," so it did not fall within the scope of § 1915(g).

for adjudication. We therefore hold that the District Court lacked the authority, at the time of dismissal, to declare that the dismissal constituted a "strike" for purposes of § 1915(g).

## III. Conclusion

Although we agree with the District Court that Dooley's Complaint failed to state a claim, we find that the District Court erred in failing to grant leave to amend without determining whether such leave would be inequitable or futile. The Court further erred when it prospectively and erroneously declared the dismissal to constitute a strike under § 1915(g). For the foregoing reasons, we will vacate the District Court's Order dismissing the Complaint without leave to amend and denying the Motion to Dismiss or for Summary Judgment, and remand for further proceedings consistent with this opinion.