**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 20-7250**

—————————

KEVIN PITTS,

                Plaintiff - Appellant,

        v.

STATE OF SOUTH CAROLINA; ANDERSON COUNTY SHERIFF'S DEPARTMENT;
MINDY HERVEY, Solicitor, individual and official capacity; CHARLES WHITEN,
Attorney, individual and official capacity; J. CARPENTER, Attorney, individual and
official capacity; KEVIN MATHERSON, State Officer, individual and official capacity;
J. MARTIN, State Officer, individual and official capacity; MIKE J. PELUSO, State
Officer, individual and official capacity; R. GEBING, State Officer, individual and official
capacity,

                Defendants - Appellees.

—————————

Appeal from the United States District Court for the District of South Carolina, at
Anderson.  Joseph F. Anderson, Jr., Senior District Judge.  (8:20-cv-00092-JFA)

—————————

Argued:  December 8, 2022                          Decided:  April 13, 2023

—————————

Before HARRIS and RICHARDSON, Circuit Judges, and Patricia Tolliver GILES, United
States District Judge for the Eastern District of Virginia, sitting by designation.

—————————

Vacated in part and remanded by published opinion.  Judge Harris wrote the majority
opinion, in which Judge Giles joined.  Judge Richardson wrote a dissenting opinion.

—————————

**ARGUED:** Kathryn L. Wynbrandt, JENNER & BLOCK LLP, Washington, D.C., for Appellant. Erin B. Ashwell, MCGUIREWOODS, LLP, Richmond, Virginia, for Court-Appointed Amicus. **ON BRIEF:** Amir H. Ali, RODERICK & SOLANGE MACARTHUR JUSTICE CENTER, Washington, D.C.; Ian Heath Gershengorn, JENNER & BLOCK LLP, Washington, D.C., for Appellant. Alan Wilson, Attorney General, L. David Leggett III, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellees. Robert S. Day, Evan X. Tucker, MCGUIREWOODS LLP, Richmond, Virginia, for Court-Assigned Amicus Counsel.

———————————

PAMELA HARRIS, Circuit Judge:

Under the Prison Litigation Reform Act's "three-strikes rule," an incarcerated plaintiff who has previously filed three lawsuits dismissed on certain grounds ordinarily will not be granted in forma pauperis status to file a new suit. When Kevin Pitts filed his first pro se § 1983 complaint as a prisoner, the district court dismissed his complaint and then declared its dismissal a "strike" for purposes of the three-strikes rule. On appeal, Pitts argues that the district court lacked authority to prospectively adjudicate a strike, and we agree. Accordingly, we vacate the district court's judgment in part and remand for issuance of a revised order.

## I.

## A.

We begin by briefly explaining the "three-strikes rule" in the background of this case. The Prison Litigation Reform Act ("PLRA"), enacted in 1996, is intended to limit the number of frivolous lawsuits filed by prisoners. To that end, the PLRA regulates the circumstances under which prisoners may obtain in forma pauperis status, which allows them to pay court filing fees on a schedule instead of all up front. *See* 28 U.S.C. § 1915. As relevant here, a prisoner generally may not proceed in forma pauperis, or "IFP," if he has previously filed three complaints dismissed for "fail[ure] to state a claim" or as "frivolous" or "malicious":

> [I]f the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or

3

fails to state a claim upon which relief may be granted, [he may not proceed in forma pauperis] unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The question here is whether a district court dismissing a prisoner complaint is authorized, at that time, to rule that its dismissal is a "strike" for purposes of future litigation.

**B.**

We turn now to the proceedings in this case. Plaintiff Kevin Pitts is incarcerated in South Carolina state prison after pleading guilty to murder. In 2020, he filed a pro se § 1983 complaint in federal court, seeking damages for alleged constitutional violations committed by the State of South Carolina; various state entities and officials, including his prosecutor; and his defense counsel. According to Pitts, he was illegally arrested without a warrant, the prosecutor in his case engaged in misconduct, and his defense counsel was constitutionally ineffective. Pitts, who was filing his first civil rights suit as a prisoner, moved for leave to proceed in forma pauperis under 28 U.S.C. § 1915, and the district court granted his motion.

The case was then assigned to a magistrate judge for screening. When a prisoner sues a governmental defendant, the PLRA's screening provision tasks the court with an initial review to determine whether the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune" from damages. 28 U.S.C. § 1915A. For cases filed in forma pauperis – like Pitts's – a partially overlapping provision requires dismissal if the court determines that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be

4

granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

The magistrate judge accordingly screened Pitts's complaint at the outset of the proceedings, prior to service of process on the defendants. After reviewing Pitts's claims in some detail, the magistrate judge recommended that his action be dismissed. Pitts's claims based on his arrest and prosecution, the magistrate judge found, were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), under which a § 1983 plaintiff seeking damages for an unconstitutional conviction must first show that his conviction was reversed or otherwise set aside. Moreover, Pitts's claims against South Carolina were barred by sovereign immunity, and his claims against his prosecutor by prosecutorial immunity. The magistrate judge also recommended dismissal of Pitts's other claims for reasons not at issue on appeal, and then, finally, recommended that Pitts's action be "designated a 'strike' pursuant to 28 U.S.C. § 1915(g)." Report of Magistrate Judge at 9.[1]

The district court accepted the magistrate's recommendation over Pitts's objections and dismissed Pitts's complaint at the screening stage. *Pitts v. South Carolina*, No. 8:20-cv-00092-JFA-KFM, 2020 WL 4506681, at *4 (D.S.C. Aug. 5, 2020). The district court agreed that because Pitts "was convicted of murder and there is no evidence that he has successfully invalidated this conviction, [his] claims are barred by *Heck*." *Id.* at *2. The court went on to identify additional grounds on which Pitts had "fail[ed] to state a claim

---

[1] The magistrate's report is not included in the Joint Appendix filed by the parties with this court but is available on the district court's docket at ECF No. 22.

for relief," *id.*, including the sovereign immunity of the state of South Carolina and the absolute prosecutorial immunity of the lawyer who prosecuted his case. *Id.* at *2–3. Accordingly, the district court dismissed Pitts's complaint without prejudice and without issuance and service of process. *Id.* at *4.

If the district court had stopped there, then we would have a very different case. But instead, the district court went on to declare in its opinion that the dismissal of Pitts's lawsuit "constitutes a strike" under § 1915(g), *id.* at *4, and that it was so designating its ruling, *id.* ("[T]he court adopts the Report [of the magistrate judge] and designates this action as a 'strike' pursuant to 28 U.S.C. § 1915(g)."). Its dismissal constituted a strike, the court explained, because it was for "failure to state a claim," one of the grounds listed by § 1915(g). *Id.*; *see* 28 U.S.C. § 1915(g). The order's "Conclusion" gave effect to this reasoning: "Thus, Plaintiff's complaint is dismissed without prejudice and without issuance and service of process. This action shall serve as a 'strike' in accordance with 28 U.S.C. § 1915(g)." *Pitts*, 2020 WL 4506681, at *4; *see also* J.A. 3 (docket order) (same).

Pitts, now with counsel, timely appealed, challenging only the district court's strike designation. First, Pitts argued, the district court erred by adjudicating the strike question at all: According to Pitts, district courts lack authority to prospectively label a dismissal a strike under § 1915(g) for purposes of a subsequent IFP application. And second, Pitts contended, the district court's strike ruling was incorrect, because neither an immunity-based nor a *Heck*-based dismissal counts as a strike under § 1915(g). Immunity-based dismissals, Pitts argued, were conspicuously omitted by Congress from § 1915(g)'s enumerated grounds. *Compare* 28 U.S.C. § 1915(g) (covering dismissals on grounds that

6

the complaint is "frivolous" or "malicious" or "fails to state a claim"), *with* 28 U.S.C. § 1915(e)(2)(B) (authorizing dismissal of in forma pauperis action that is "frivolous or malicious," "fails to state a claim," *or* "seeks monetary relief against a defendant who is immune from such relief"). And application of the *Heck* bar effectively deems a claim premature, Pitts reasoned, making it analogous to a dismissal for failure to exhaust – which this court has held falls outside § 1915(g)'s scope. *See Green v. Young*, 454 F.3d 405, 410 (4th Cir. 2006).

Because the defendants in this action, including the state of South Carolina, had not been served or appeared in the district court at the time of the dismissal and declined to participate in the appeal, we appointed amicus counsel to defend the district court's judgment. *See Hill v. Madison County*, 983 F.3d 904, 907 (7th Cir. 2020) (appointing amicus counsel to argue in support of district court's judgment in same posture).

## II.

The threshold question in this appeal is whether § 1915(g) authorized the district court to adjudicate Pitts's complaint a strike for purposes of the three-strikes rule. If the district court did have that authority, then we are asked to address a second set of questions, weighing in on the correctness of its strike determination.

We conclude that we need not – indeed, cannot – reach the merits of the district court's strike designation, because we agree with Pitts that the district court lacked authority to make that call in the first place. Accordingly, and as explained below, we

7

vacate the district court's judgment in part and remand for issuance of a modified order consistent with this opinion.

## A.

This is an unusual case in that the parties before us – along with every federal court of appeals to address the question – agree on the central issue presented: whether a district court, at the time it dismisses a complaint under the PLRA, is authorized to make a binding determination that its dismissal will count as a strike in future applications of § 1915(g)'s three-strikes rule.   Joining the consensus, we hold that a district court may not contemporaneously rule that its dismissal of a complaint constitutes a strike.

We return to the text of § 1915(g):

> In no event shall a prisoner bring a civil action . . . under this section *if the prisoner has, on 3 or more prior occasions*, while incarcerated or detained in any facility, *brought an action* or appeal in a court of the United States *that was dismissed* on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (emphasis added).  Like other courts, we read this language to require a "backwards-looking inquiry" by a court faced with an application to proceed in forma pauperis.  *Simons v. Washington*, 996 F.3d 350, 352 (6th Cir. 2021).  What § 1915(g) contemplates is a "prisoner" who is currently attempting to "bring a civil action" in forma pauperis ("under this section") after having had three "*prior*" suits "*dismissed*" in the past. § 1915(g) (emphasis added); *see Dooley v. Wetzel*, 957 F.3d 366, 377 (3d Cir. 2020).  At that point, § 1915(g) "calls on a fourth (or at least later) court that has before it a civil action brought by the prisoner" to look backwards, *Simons*, 996 F.3d at 352, "evaluat[ing] whether

8

'prior' suits 'brought' by the same plaintiff were dismissed on enumerated grounds," *Dooley*, 957 F.3d at 377. If and when Pitts files a *future* motion to proceed IFP under § 1915(g), it will be up to *that* district court – not a district court who previously dismissed one of his suits – to go back, count dismissals, and determine for itself whether there are three that qualify as strikes under the terms of § 1915(g). *See Fourstar v. Garden City Grp., Inc.*, 875 F.3d 1147, 1152 (D.C. Cir. 2017); *Hill*, 983 F.3d at 906 ("[Section] 1915(g) commits to a later tribunal the toting up of 'strikes' in earlier suits . . . .").[2]

As noted above, the federal courts of appeals to consider the question are unanimous on this threshold point. *See also Deleon v. Doe*, 361 F.3d 93 (2d Cir. 2004) (per curiam); *Gonzalez v. United States*, 23 F.4th 788 (8th Cir. 2022). Pitts suggests that we go further, finding that the district court lacked not only statutory authority but also Article III jurisdiction to make a strike determination, on the theory that whether a dismissal constitutes a strike becomes ripe for adjudication only after a subsequent request for IFP status. We decline that invitation. It is true, as Pitts argues, that some courts have framed

---

[2] Although Amicus does not disagree with this reading of § 1915(g), it does point to our decision in *Blakely v. Wards*, 738 F.3d 607 (4th Cir. 2013) (en banc), in which we held that that a subsequent court applying § 1915(g)'s three-strikes rule may not reevaluate the basis for dismissal given by a prior court. We see no inconsistency there. Under *Blakely*, a subsequent court applying the three-strikes rule to Pitts must take as a given that his prior action was properly dismissed under *Heck* and on immunity grounds. But that is a distinct question from whether those grounds qualify the dismissal as a "strike" under § 1915(g). *Cf. Fourstar*, 875 F.3d at 1153 n.2 ("[T]he question of whether a prior district court properly labeled the case as a strike is distinct from the question of whether a prior district court properly dismissed a case for failure to state a claim, or as frivolous or malicious. The former is not binding on the later district court; the latter is binding on the later district court.").

their analysis in constitutional terms, *see Deleon*, 361 F.3d at 95, or suggested that reading § 1915(g) to authorize prospective strike adjudications would raise ripeness concerns, *see Dooley*, 361 F.3d at 377.  But other courts have reasoned – we think persuasively – that this is a "misnomer," and that the problem with allowing a dismissing district court to issue a binding strike ruling is statutory, not constitutional.  *See Hill*, 983 F.3d at 906; *Simons*, 996 F.3d at 354 ("[T]he text of the Prison Litigation Reform Act, not the text of the Constitution, resolves this case.").

In any event, we need not reach out to resolve constitutional questions here. Whether or not Congress *could* have written the PLRA, as the *Hill* court hypothesized, to require that a court dismissing an action also decide conclusively whether its dismissal counts as a strike, *see* 983 F.3d at 906, it plainly did not do so.  *See Fourstar*, 875 F.3d at 1152 ("If Congress wanted district courts to contemporaneously label dismissals as strikes or wanted those labels to bind future district courts, Congress could have said so in the PLRA. Congress said no such thing.").  Instead, § 1915(g) makes clear that the strike decision is solely for the district court considering a subsequent request for IFP status, and that courts are not authorized to make binding strike determinations when they dismiss prisoners' complaints.  That is enough to resolve the matter.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (explaining federal courts' discretion to "choose among threshold grounds for denying audience to a case on the merits"); *cf. Am. Petrol. Inst. v. EPA*, 862 F.3d 50, 75 (D.C. Cir. 2017) (declining to reach Article III jurisdiction after finding lack of statutory jurisdiction).

10

**B.**

As explained above, the parties here agree, as we have just held, that district courts lack authority to adjudicate conclusively whether their dismissals of prisoner actions constitute strikes under the three-strikes rule. We turn now to the question on which the parties – and the courts – are divided: What happens if a district court nevertheless purports to do just that, as the district court did here? One might assume that a strike adjudication that exceeds a district court's authority must be vacated, and at least two circuits have taken that straightforward approach. *See Deleon*, 361 F.3d at 95; *Dooley*, 957 F.3d at 378; *see also Gonzalez*, 23 F.4th at 791 (Gruender, J., dissenting) (explaining that vacatur is appropriate remedy when district court "decides a question outside its jurisdiction"). Other courts, however, have endeavored to save these pronouncements by treating them as non-binding dicta, *see Simons*, 996 F.3d at 352–53; *Gonzalez*, 23 F.4th at 790–91, and Amicus urges us to do the same. We do not think that is a viable approach.

Our starting point is that the district court's strike determination against Pitts was intended and presented as an actual adjudication of the issue, equally as binding as the court's other rulings. The strike designation appears in the "Conclusion" section of the court's order, side by side with the rest of the court's decretal language: "Thus, Plaintiff's complaint is dismissed without prejudice and without issuance and service of process. This action shall serve as a 'strike' in accordance with 28 U.S.C. § 1915(g)." *Pitts*, 2020 WL 4506681, at *4. The docket text is the same: The "complaint is dismissed without prejudice" and the "action shall serve as a strike" under § 1915(g). J.A. 3. All agree, of course, that the district court's dismissal of Pitts's action is a binding court ruling. And

11

nothing on the face of the court's order suggests a different status for the strike designation paired with that dismissal.

Separating dictum from holding in a court's opinion can sometimes be tricky. *See United States v. Rubin*, 609 F.2d 51, 69 n.2 (2d Cir. 1979) (Friendly, J., concurring); *Gonzalez*, 23 F.4th at 791–92 (Gruender, J., dissenting) (disagreeing with majority's treatment of strike designation as dicta). But at bottom, dicta are statements that help to explain a court's decision – not "by providing a legal basis for it," as "holdings do," but by "clarifying or providing context for it." *Gonzalez*, 23 F.4th at 792 (Gruender, J., dissenting) (citing BLACK'S LAW DICTIONARY (11th ed. 2019)). Here, it is undisputed that the district court was authorized to make one and only one decision: how to dispose of Pitts's complaint. Its strike designation – stated in mandatory and conclusive terms in its opinion, *Pitts*, 2020 WL 4506681, at *4 ("The dismissal of the instant action constitutes a strike[.]"), as well as in its ultimate ruling, *see* J.A. 3 – does nothing to expand on or explain that decision. We see no way to read that language as "anything other than a second decision: a pronouncement that purports to settle whether the dismissal counts as a strike within the meaning of 28 U.S.C. § 1915(g)." *Gonzalez*, 23 F.4th at 792 (Gruender, J., dissenting) (internal quotation marks omitted).

To be fair, courts treating similar strike designations as dicta are not really disagreeing with our reading of those pronouncements. However a strike designation reads, they seem to reason, it *must* be dictum, and we know that because § 1915(g) does not *permit* it to be an actual and binding court ruling. *See Simons*, 996 F.3d at 352–53. Perhaps that approach has some virtue when it comes to construing ambiguous language

12

in an opinion, which could be cast either as a holding or as something more akin to a "warning" about the potential consequences of a dismissal in later litigation. *See id.* at 353. But we are aware of no other context in which decretal language that unmistakably purports to set out a court's judgment may be reverse engineered into dicta because it otherwise would be legal error.

And in this context, allowing to stand as "dicta" what looks to all the world like an actual court ruling may pose special risks. First, there is the risk that other courts – the "fourth" courts charged with applying the three-strikes rule – will defer to these purported judgments. *See Hill*, 983 F.3d at 908 (explaining that strike designations by dismissing courts "draw a future judge's attention"). The dismissing court, without an IFP request before it, may have given less attention than it otherwise would to evaluating whether its dismissal qualifies as a § 1915(g) "strike." *See Deleon*, 361 F.3d at 95 n.1 (recognizing that "[c]ontemporaneous classification of dismissals as strikes or non-strikes at a time when the ruling has no immediate consequences" may lead to less careful or thorough decisions). But even so, its apparent ruling on the matter may "induce the [future] judge to deny *forma pauperis* status," and to do so "wrongly." *Hill*, 983 F.3d at 908; *Dooley*, 957 F.3d at 377 (discussing "risk that dismissing courts will make haphazard or erroneous determinations to which subsequent courts might defer").[3]

---

[3] We in no way cast doubt on the efforts of the district court here, and we express no view on the merits of its strike designation. But in connection with the risks outlined above, we note that the strike question in this case is not entirely free from doubt. Whether a *Heck*-based dismissal qualifies as a "strike" under § 1915(g), for instance, is a difficult enough question that the federal courts of appeals are divided on the answer. *See Lomax v.*

Second, the distinction between an *actual* strike-designation ruling and dicta that just *looks* like a strike-designation ruling may well be lost on the pro se litigants most directly affected. Pitts, for instance, would have had no way of knowing that when the district court decreed both that his complaint was dismissed and that his action constituted a strike under § 1915(g), J.A. 3; *Pitts*, 2020 WL 4506681, at *4, the first part of that decree was a binding court ruling but the second part somehow was not. To be sure, Pitts had filed only one prisoner civil rights complaint at the time – but even a first strike may influence a prisoner's thinking as to whether filing a second complaint is worth the risk. *See Belanus v. Clark*, 796 F.3d 1021, 1028 (9th Cir. 2015). And when a dismissing court purports to call a *third* strike, a prisoner taking the court at its word will understand that the matter is settled: He has no further recourse to the federal courts and must forgo any future litigation, no matter how meritorious the case or serious the constitutional violation. *Cf. Fourstar*, 875 F.3d at 1153 (recognizing that strike designations are the "key to the courthouse door"); Margo Schlanger, *Trends in Prisoner Litigation, as the PLRA Approaches 20*, 28 CORR. L. REP. 69, 70 (2017) ("[L]itigation remains one of the few avenues for prisoners to seek redress for adverse conditions or other affronts to their rights.").[4]

---

*Ortiz-Marquez*, 140 S. Ct. 1721, 1723–24 & n.2 (2020) (recognizing and leaving open circuit split). As the court observed in *Dooley*, the "possibility for error" on such issues is "greatly reduced" if they are decided by a future court, "when the strike question has an immediate impact" and "with the benefit of briefing by the parties." 957 F.3d at 377.

[4] As noted above, § 1915(g) does have a narrow exception for prisoners "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). But as Pitts explains,

14

Recognizing those problems, Amicus proposes a solution. Neither future courts nor prisoners will be misled by purported-but-not-really strike rulings that prove incorrect, Amicus reasons, if we review and correct those non-rulings on appeal. We do not see how this can work. The premise here, advanced by Amicus, is that the district court's strike designation against Pitts need not be vacated because it is nothing more than dicta. But if that is so, then it follows that we cannot review it; we are authorized to review judgments, not dicta. *See Everett v. Pitt Cnty. Bd. of Educ.*, 678 F.3d 281, 291 (4th Cir. 2012). Amicus cannot have it both ways: If we are going to convert prospective strike adjudications into dicta for purposes of allowing them in court orders, then we cannot turn around and convert them back into binding rulings when it comes time for appellate review. Two courts have held as much. *See Simons*, 996 F.3d at 354 (declining to review merits of prospective strike designation after deeming it dicta); *Gonzalez*, 23 F.4th at 791 (same). And while one court has tried to thread this needle, *see Hill*, 983 F.3d at 908, we respectfully disagree that the same strike designation can be "dicta in the sense that [it is] not *binding*" but non-dicta in the sense that it may be *appealed*.[5]

---

even very significant constitutional violations – including past physical abuse, the denial of religious accommodations, or the deprivation of property – will fall outside that exception.

[5] As Amicus points out, this court has on previous occasions reviewed the merits of district courts' contemporaneous strike determinations. *See*, *e.g.*, *Jackson v. Jackson*, 764 F. App'x 326 (4th Cir. 2019) (per curiam); *Walker v. Laundry*, 697 F. App'x 179 (4th Cir. 2017) (per curiam). Those unpublished and nonprecedential decisions apparently assumed both the district court's authority to make strike calls and our jurisdiction to review them; in none of them were the issues raised by Pitts's appeal squarely presented or addressed.

To be clear, none of these concerns are implicated when a district court, in dismissing a complaint under the PLRA, includes in its opinion actual dicta regarding § 1915(g) strikes – say, a warning that its dismissal could later be deemed a strike under the three-strikes rule. *See Gonzalez*, 23 F.4th at 792 (Gruender, J., dissenting) (explaining that a "mere[] warn[ing]" about a dismissal's "potential consequences" could be "construed as clarifying or providing context" for the dismissal decision and so properly treated as dicta). Indeed, such "non-binding" warnings as to the consequences of a judgment "appear all the time" – for instance, when a court warns a party that defiance of an injunction will lead to a contempt citation, or a defendant that failure to abide by the terms of a supervised release order will result in revocation. *See Simons*, 996 F.3d at 353; *see also Hill*, 983 F.3d at 906. Here, too, a comparable warning could provide helpful "notice to the inmate that may inform his later litigation strategies or decisions." *Simons*, 996 F.3d at 353. And critically, because these warnings look like the dicta they are and do not purport to conclusively resolve the strike question, there is little risk they will induce unwarranted deference from future courts or mislead litigants, and thus no need to imagine a category of "appealable dicta" to mitigate those effects.

But as we have explained, that is not this case. Here, the district court purported to make a conclusive ruling as to the strike status of its dismissal, an act in excess of its statutory authority. The only appropriate remedy is to vacate that portion of the district court's decision. *See Deleon*, 361 F.3d at 95 (vacating contemporaneous strike designation and remanding with instructions to modify); *cf. U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21–22 (1994) (explaining that it is appropriate for appellate courts to

16

vacate a decision made outside district court jurisdiction).  We are no more authorized than the district court to settle the merits of the strike designation in this posture; review of the merits "will have to wait" until a "fourth or later court" decides, pursuant to § 1915(g), whether the dismissal of Pitts's action constituted a strike under the three-strikes rule.  *See Simons*, 996 F.3d at 354.

## III.

For the reasons given above, the judgment of the district court is vacated in part and the matter remanded to the district court for modification of its order consistent with this opinion.

*VACATED IN PART AND REMANDED*

RICHARDSON, Circuit Judge, dissenting:

One way that the Prison Litigation Reform Act limits frivolous prisoner litigation is by denying in forma pauperis status to prisoners who have "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). This is a backward-looking inquiry. Whenever a prisoner files a new suit or appeal, and applies to proceed in forma pauperis, the court considering that application must review all of the prisoner's prior suits and appeals to determine whether at least three were dismissed as frivolous, malicious, or for a failure to state a claim. *See id.* This ultimate determination that a dismissal will count as a strike belongs to that later court. So far, the majority and I agree (as do all the other circuit courts to consider the issue[*]).

But does the conclusion that the strike determination is to be made by a later court bar a district court from saying *anything* about that future strike determination? Of course not. On this too, the majority and I agree: The district court can provide its opinion that a

---

[*] Courts have traveled different paths to this conclusion. Some say, as I have just described, that a contemporaneous-strike ruling exceeds the statutory authority under § 1915(g). Others have decided such a ruling violates Article III's case-or-controversy requirement. Though reaching the same conclusion, these different paths may—and I emphasize may—lead to different results. Courts reading this limitation as stemming from Article III often vacate orders purporting to contemporaneously call a strike. *See, e.g.*, *Dooley v. Wetzel*, 957 F.3d 366, 377–78 (3d Cir. 2020). But those that find the limitation in § 1915(g) have either affirmed the appealed order, even where the district court purports to definitively assess a strike, *see Simons v. Washington*, 996 F.3d 350, 353–54 (6th Cir. 2021), or else dismissed the appeal. *See Gonzalez v. United States*, 23 F.4th 788, 790–91 (8th Cir. 2022).

18

dismissal will constitute a strike under § 1915(g). The district court's view, expressed in what we might call dicta, is not binding on a future court. And like other non-binding statements—warnings about contempt, converting motions to §2255 applications, and supervised-release revocation—it is nonetheless permissible. *See Simons*, 996 F.3d at 353.

These areas of agreement are what matters most here: The ultimate strike designation is to be made by a later court considering a prisoner's future suit, but the district court dismissing a suit can opine that the dismissal is a strike.

The majority, however, takes another step. It says that, while the district court can express its view, it becomes reversible error if the court doesn't accompany that view with the proper hedge. True, the district court here did not hedge its statement that its dismissal "constitutes a strike"; the court did not say that the dismissal "*should* constitute a strike," or that it "*may* constitute a strike," or that it "*likely* constitutes a strike." In other words, the district court did not affirmatively flag that its statement will not bind a future court. Yet the majority's opinion does so now. Even so, the majority demands that the district court redo its order, just to preface its statement with a dicta disclaimer. Since the district court's strike statement is dicta—and since that is the only portion of the district court's order that the defendant challenges here—there is nothing left for our court to do. We should simply dismiss the appeal. *See Gonzalez*, 23 F.4th at 790–91. I thus respectfully dissent.

19