**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-2968

_____

FRANK BUSH,
                    Appellant

v.

JANE DOE (I); JANE DOE (II); JANE DOE (III); JOHN DOE,
sued in their individual and official capacities

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action No. 1:18-cv-12910)
District Judge:  Honorable Noel L. Hillman

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 25, 2021

Before:  GREENAWAY, JR., and SHWARTZ, Circuit Judges, and KANE, District
Judge.[*]

(Filed: June 8, 2021)
_____

OPINION[**]

_____

_____

[*] The Honorable Yvette Kane, United States District Judge for the Middle District
of Pennsylvania, sitting by designation.
[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

SHWARTZ, <u>Circuit Judge</u>.

Frank Bush appeals the District Court's order dismissing his suit under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Because Bush has plausibly alleged that prison officials Jane Doe (I), Jane Doe (II), Jane Doe (III), and John Doe ("Defendants") were deliberately indifferent to his medical needs, we will vacate the dismissal order and remand.

I[1]

A

Hepatitis C is a virus that affects liver cells. <u>See</u> <u>Hepatitis C Fact Sheet</u>, World Health Organization (July 27, 2020), https://www.who.int/news-room/fact-sheets/detail/hepatitis-c. Individuals infected with Hepatitis C often develop chronic Hepatitis C, causing progressive liver inflammation and fibrosis (scarring) or cirrhosis (extreme scarring). <u>Id.</u> The disease affects liver function, and patients with chronic Hepatitis C may suffer from conditions like diabetes, <u>see</u> Sara Salehi Hammerstad et al., <u>Diabetes and Hepatitis C: A Two-Way Association</u>, 6 Frontiers in Endocrinology, 2015, at 1, or contract liver cancer, <u>see</u> <u>Hepatitis C Fact Sheet</u>, World Health Organization.

In 2011, the Food and Drug Administration approved new direct-acting antivirals ("DAAs") to treat Hepatitis C, which have a ninety to ninety-five percent success rate of

---

[1] We derive the background from Bush's complaint, which we accept as true, <u>see</u> <u>infra</u>, at 5 n.4, and attached exhibits, as well as facts of which we may take judicial notice. <u>See</u> Fed. R. Evid. 201(b)(2); <u>see also</u> <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1213 n.1 (11th Cir. 2015) (taking judicial notice of facts when evaluating an order dismissing the complaint under 28 U.S.C. § 1915(e)(2)).

2

producing a sustained virological response.[2] See Ayman Geddawy, et al., Direct Acting Anti-Hepatitis C Virus Drugs: Clinical Pharmacology and Future Direction, 5 J. Translational Internal Med. 8, 8-9 (2017); Robert S. Brown, Jr., The Possible Association Between DAA Treatment for HCV Infection and HCC Recurrence, 12 Gastroenterology & Hepatology 776, 776 (2016). In 2015, the American Association for the Study of Liver Disease ("AASLD") and the Infectious Diseases Society of America ("IDSA") began recommending DAA treatment for all patients with chronic Hepatitis C, except those with limited life expectancy because of nonhepatic conditions. See AASLD/IDSA HCV Guidance Panel, Hepatitis C Guidance: AASLD-IDSA Recommendations for Testing, Managing, and Treating Adults Infected with Hepatitis C Virus, 62 Hepatology 932, 936 (2015). While effective, DAAs are also expensive, costing up to $100,000 per treatment.

B

Frank Bush contracted Hepatitis C while incarcerated at Bayside State Prison. In 2017, Jane Doe I evaluated Bush and informed him that "his Hep C levels were so high that he needed immediate treatment," but that "most inmate[s] in [Bush's] situation don't get treatment because [of] the cost." App. 39. As a result, Jane Doe I did not provide Bush with treatment. Later that year, Bush was transferred to Northern State Prison.

---

[2] A sustained virological response means that the Hepatitis C virus is not detected in the blood for twelve weeks or more after completing treatment. See AASLD/IDSA HCV Guidance Panel, Hepatitis C Guidance: AASLD-IDSA Recommendations for Testing, Managing, and Treating Adults Infected with Hepatitis C Virus, 63 Hepatology 932, 935 (2015).

There, John Doe told Bush that his hepatitis "was not bad enough for treatment," even though Bush "could barely get out of bed by this time." App. 40. John Doe also said that "the cost [of treatment] was too high." App. 40.

In May 2018, Bush filed a grievance with the Northern State Prison because he was not receiving treatment. The prison responded, explaining that the New Jersey Department of Corrections ("NJDOC") "has a protocol for monitoring patients with Hepatitis C" and that Bush was "currently being monitored according to that protocol and [his] name is on the treatment waiting list." App. 51. He was told that he would be notified "[w]hen there is a treatment spot available."[3] App. 51.

## C

Bush sued Defendants, alleging that their deliberate indifference to his serious medical needs violated his Eighth Amendment rights. Bush sought leave to file his complaint in forma pauperis. The District Court screened the complaint before service of process under 28 U.S.C. § 1915(e)(2) to determine whether it "state[s] a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The Court held it did not. The Court recognized that "Hepatitis C qualifies as a serious medical condition," App. 5, but that Bush failed to plausibly allege that Defendants were deliberately indifferent to his medical needs because (1) monitoring Bush's Hepatitis C constituted treatment, and (2) Bush did not plausibly allege that nonmedical considerations influenced that treatment. Bush appeals.

---

[3] Bush began receiving treatment in April 2019. As a result, his request for injunctive relief is moot.

4

II[4]

Prison officials violate an inmate's Eighth Amendment right to be free from cruel and unusual punishment when they are deliberately indifferent to an inmate's serious medical needs. See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (describing two-part standard established in Estelle v. Gamble, 429 U.S. 97 (1976)). To plead such a claim, a plaintiff must allege that (1) the medical need is "serious," meaning it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention," and (2) prison officials were deliberately indifferent to that need. Id. at 347 (quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981)). While "mere disagreement as to the proper medical treatment

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

"We exercise plenary review over the District Court's sua sponte dismissal of the Complaint under . . . [28 U.S.C. §] 1915(e)(2)." Dooley v. Wetzel, 957 F.3d 366, 373 (3d Cir. 2020) (italics omitted). The standard for dismissal under § 1915(e)(2)(B)(ii) is the same as under Fed. R. Civ. P. 12(b)(6). See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). Thus, "we treat as true all well-pleaded facts in the complaint, which we construe in the 'light most favorable to the plaintiff.'" Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014) (quoting Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)). A plaintiff "must state a 'plausible' claim for relief, and '[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Thompson v. Real Est. Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014) (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "In assessing the Complaint, we are mindful of our 'obligation to liberally construe a pro se litigant's pleadings,' particularly where the pro se litigant is imprisoned." Dooley, 957 F.3d at 374 (italics omitted) (citation omitted) (quoting Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011)).

5

[does not] support a claim of an [E]ighth [A]mendment violation," a prison official is deliberately indifferent if he delays necessary medical treatment for nonmedical reasons, selects "an easier and less efficacious treatment of the inmate's condition," or "prevent[s] an inmate from receiving recommended treatment for serious medical needs." Id. at 346-47 (internal quotation marks omitted).

Hepatitis C qualifies as a serious medical need, see, e.g., Mitchell v. Nobles, 873 F.3d 869, 876 (11th Cir. 2017) (recognizing that Hepatitis C constitutes a serious medical need), and the allegations plausibly allege that Defendants were deliberately indifferent to that need. Defendants allegedly delayed treating Bush's Hepatitis C for a nonmedical reason: cost. To be sure, "the deliberate indifference standard of Estelle does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997). That said, "the Constitution is violated when [costs] are considered to the exclusion of reasonable medical judgment about inmate health." Roe v. Elyea, 631 F.3d 843, 863 (7th Cir. 2011) (emphasis omitted). Accepting his allegations as true, Bush has plausibly alleged that Defendants prioritized cost considerations and disregarded reasonable medical judgment.

Bush's allegations also demonstrate more than a disagreement with the choice of care. First, he alleged the treatment he sought was appropriate, but that costs impacted his ability to receive it. Second, simply monitoring his condition did not constitute

6

appropriate treatment for a situation where medication was allegedly warranted.[5] Moreover, delay in receiving DAA treatment may render it less effective, Postawko v. Mo. Dep't of Corr., 910 F.3d 1030, 1034 (8th Cir. 2018), and if the delay was the result of deliberate indifference, then it would violate the Eighth Amendment, Monmouth Cnty., 834 F.2d at 347.

In sum, Bush alleged he suffered a serious medical condition and that he was allegedly denied DAA treatment because of cost. Because he has alleged that Defendants were deliberately indifferent to his medical needs, and thereby put forth a plausible claim that they violated his Eighth Amendment right to medical care, his complaint was prematurely dismissed.

### III

For the reasons above, we will vacate the dismissal order and remand for further proceedings.

---

[5] Indeed, the NJDOC's letter to Bush recognizes this distinction. In that letter, NJDOC informed Bush that he would be placed on a "treatment waiting list" and would be "monitored" until a "treatment spot" became available. App. 51.