**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1274
_____

ALAN DECKER,
                    Appellant

v.

COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
LAUREL HARRY, Secretary of the Pennsylvania Department of Corrections;
MICHAEL WENEROWICZ, Pennsylvania Department of Corrections
Deputy Secretary for Office of Reentry
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 3:23-cv-00144)
District Judge: Honorable Stephanie L. Haines
_____

Submitted under Third Circuit LAR 34.1(a)
November 3, 2025

Before: KRAUSE, PHIPPS, and ROTH, *Circuit Judges*

(Filed: January 15, 2026)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**KRAUSE**, *Circuit Judge*.

Appellant Alan Decker is a blind man who faced delayed parole placement in the Pennsylvania Department of Corrections' (DOC) halfway-house program and brought claims under the Equal Protection Clause of the Fourteenth Amendment, Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794. Because the District Court properly dismissed Decker's equal protection claim but mistook the program at issue when analyzing his ADA and RA claims, we will affirm in part, vacate in part, and remand for further proceedings.

## I.    DISCUSSION[1]

Below, we address (A) Decker's equal protection claim and (B) his ADA and RA claims, before considering whether those claims entitle Decker to monetary relief.

### A.    Equal Protection Clause

Decker brought a "class of one" claim under the Equal Protection Clause, alleging that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). When identifying those "similarly situated" at the pleading stage,

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343, and this Court has jurisdiction under 28 U.S.C. § 1291. We review an order granting a motion to dismiss *de novo*, *see Child.'s Health Def., Inc. v. Rutgers*, 93 F.4th 66, 74 (3d Cir.), *cert. denied*, 144 S. Ct. 2688 (2024), a denial of a motion for reconsideration under the same standard of review as the underlying judgment, *see McAlister v. Sentry Ins. Co.*, 958 F.2d 550, 552-53 (3d Cir. 1992), and a denial of leave to amend for abuse of discretion, *see Dooley v. Wetzel*, 957 F.3d 366, 376 (3d Cir. 2020).

plaintiffs "must adequately allege that they are alike in all relevant respects" to the comparators by "offer[ing] more than conclusory assertions." *Child.'s Health Def., Inc. v. Rutgers*, 93 F.4th 66, 84 (3d Cir.), *cert. denied*, 144 S. Ct. 2688 (2024) (citation modified). Only if the comparators are similarly situated at this degree of specificity do we consider whether it was rational for the Government to treat them differently. *Id.* at 85.

Decker alleges that DOC treated him "in a substantially more adverse manner than others who have been granted parole and are not blind" when it denied him placement in its halfway-house program. App. 14 ¶ 49. But Decker is not similarly situated to all other parolees because "[o]ther factors explaining disparate treatment will usually preclude persons from being similarly situated . . . [and] doom[] an equal-protection claim." *Stradford v. Sec. Pa. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022). Critically here, "Pennsylvania law imposes unique collateral consequences on sex offenders," like Decker, including consequences that make it more difficult to qualify for housing. *Id.* at 75. As a result, Decker is not similarly situated as to his placement in halfway houses even aside from other considerations—such as parolees' offense classifications, reentrants' separation requirements, halfway-house facilities' gender-segregation restrictions, or available community resources—that can explain the DOC's different placement decisions. *See* Answering Br. 15 n.6 (discussing some of the placement

3

considerations in DOC Referral Processing and Placement Policy, 8.1.1). The District Court thus correctly denied Decker's "class of one" claim.[2]

### B.     Americans with Disabilities Act and Rehabilitation Act

As a threshold matter, Decker does not dispute that the statutes of limitations applicable to the ADA and RA bar his statutory claims based on actions that occurred prior to June 30, 2021. But his amended complaint also asserts that he was denied placement in DOC's halfway-house program in November 2021. *See* App. 10-11, ¶¶ 25-26. We will therefore analyze Decker's remaining ADA and RA claims as to events that occurred after June 30, 2021, and before Decker was placed in a halfway house on October 26, 2022.

We consider ADA and RA claims together because "[e]xcept for causation, the substantive standards for determining liability under Section 504 and Title II are identical." *Montanez v. Price*, 154 F.4th 127, 146 (3d Cir. 2025). To state a claim for disability-based discrimination under either provision, a plaintiff must allege that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or other activities for which a public entity is responsible, or was otherwise subjected to discrimination by a public entity;

---

[2] Although Decker contests the District Court's decision to deny his Equal Protection Clause claim with prejudice and seeks permission to amend his operative complaint, we see no abuse of discretion in the District Court's determination that, after a prior round of amendment, "further leave to amend and resulting motions practice would be inequitable to Defendants." App. 39-40.

(4) by reason of his disability." *Id.* Here, only the third and fourth requirements are at issue.[3]

As to the third, the ADA and RA provide "all-encompassing" protections by defining the phrases "service, program, or activity" under Title II and "program or activity" under Section 504 to include "*all* of the operations of a state instrumentality" or "anything a public entity does." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019) (citation modified). While the scope of the protection is "extremely broad," plaintiffs can define the specific programs or services at issue narrowly. *See Montanez*, 154 F.4th at 147-48 (noting that the plaintiff alleged denial of access to "at least three different programs or services," including (1) medical care, (2) showers, sinks, and toilets, and (3) accessible beds).

Decker specifically sought placement in the DOC's halfway-house program because halfway houses provide services that "are often vital to a paroled inmate's ability to re-integrate." App. 9 ¶13. For that reason, he rejected an offer from DOC to be placed in a personal care home on February 2, 2017, reasoning that it was "not a DOC owned or operated halfway house," App. 10 ¶ 23, and "did not offer equivalent services and benefits as provided in the halfway house program," Reply Br. 3. The District Court, however, defined the program broadly as any "parole placement by the DOC," App. 43,

---

[3] The parties do not dispute that Decker is a qualified individual with a disability or that he was denied participation in a DOC program. They also appear to agree that the program at issue is the DOC's halfway-house program. In addition, Decker does not challenge the District Court's dismissal of his ADA and RA claims against the individual defendants, as individuals cannot be personally liable under those statutes. *See Montanez*, 154 F.4th at 145.

and because Decker had been offered and rejected the parole placement in a personal care home, concluded that Decker failed to state a claim.

That analysis was flawed because Decker permissibly defined the relevant program with specificity, *see Montanez*, 154 F.4th at 147-48, and the District Court unnecessarily broadened the definition in a way that foreclosed relief. The program at issue, as pleaded in Decker's amended complaint, was placement in a DOC-owned or -operated halfway house, so Decker's decision to refuse an offer for placement in a personal care home does not preclude his claim for denial of participation in that specific program.[4]

As to the fourth requirement, causation turns on whether Decker was denied placement in the halfway-house program "*by reason of* his disability." *Montanez*, 154 F.4th at 146 (emphasis added). As proof of causation, Decker points to a declaration submitted by Appellee and DOC official, Michael Wenerowicz, to the *Stradford* district court in April 2022, which represented that Decker had been "hard to place" because of "his medical conditions—not his [sexually violent predator (SVP)] designation." App. 19 ¶ 9. That representation is sufficient to allege causation under the ADA at the pleading stage because "the ADA only requires but-for causation." *Durham v. Kelley*, 82 F.4th 217, 226 (3d Cir. 2023). But the causation standard differs for the RA: "under the

---

[4] DOC asserts that Decker refused placement in a halfway house in January 2021 "as he only wished to reside in an apartment or room." Answering Br. 5. If true, that refusal could foreclose Decker's claim that he was denied participation in DOC's halfway-house program after January 2021. But Decker disputes that DOC made this offer, and we must construe disputed facts in the plaintiff's favor at the motion to dismiss stage.

6

RA, the disability must be the sole cause of the discriminatory action." *Id.* And his

disability was not the sole cause of the discrimination alleged by Decker. Instead,

Decker's sexual offense classification and its corresponding collateral consequences also

contributed to DOC's difficulty in placing him in a halfway house. *See supra* Section

I.A. Even the Wenerowicz declaration indicates that Decker's placement was delayed, at

least in part, for reasons unrelated to his disability, including that his SVP status prevents

him from being placed at halfway houses where children reside. App. 20 ¶ 13.

Accordingly, we conclude that Decker pleaded sufficient facts for his ADA claim, but not

his RA claim, to survive DOC's motion to dismiss.[5]

*   *   *

In sum, Decker is a qualified individual with a disability who alleged, specifically,

that he was denied participation in DOC's halfway-house program. Although he failed to

---

[5] Decker may pursue compensatory damages for this claim because he pleaded facts to show intentional discrimination under the deliberate indifference standard, which requires proving that DOC (1) "had knowledge that a federally protected right is substantially likely to be violated," and (2) "failed to act despite that knowledge." *Furgess*, 933 F.3d at 292 (citation modified). The relevant "federally protected right" is Decker's "right under the ADA to be free from disability discrimination," App. 46, and Decker adequately alleged that DOC acted with deliberate indifference when—despite its knowledge that he was totally blind and receipt of communications from his counsel stating that Decker required minimal accommodations—it failed to place him in a halfway house due to the additional accommodations it maintained he needed. Although DOC argues that Decker is "barred from seeking compensatory damages" for this claim because he "failed to articulate any actual injury suffered as a result of the denial of his requested [halfway-house] placement," Answering Br. 23 n.13, Decker pleaded that "Defendants' conduct . . . caused [him] to lose his liberty," as well as the benefits of the DOC halfway-house program, *see* App. 13 ¶ 46, 14 ¶ 53, 15 ¶ 58. As a result, he has pleaded facts sufficient to survive DOC's motion to dismiss, but it will be his burden to demonstrate through discovery the value of his injuries and those losses for which he seeks compensation.

state a claim under the RA that his blindness was the sole cause of the denial, Decker pleaded sufficient facts to support his ADA claim that it was a but-for cause of DOC's decision to deny him placement in a halfway house.  And Decker may pursue monetary damages to compensate his loss of expectation interest and similar breach of contract harms flowing from that placement delay.

## II.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's dismissal of Decker's claims under the Equal Protection Clause and the RA, will vacate the District Court's dismissal of Decker's ADA claim based on events that occurred after June 30, 2021, and before Decker was placed in a halfway house on October 26, 2022, and will remand for further proceedings consistent with this opinion.

*Decker v. Commonwealth of Pennsylvania Department of Corrections*, No. 25-1274
**PHIPPS**, *Circuit Judge*, dissenting in part.

I disagree with the holding of the Majority Opinion that Alan Decker, a blind convicted sex offender, has alleged a plausible Title II claim, inclusive of compensatory damages, for not placing him in the halfway house of his choosing.

In September 2015, Decker was granted parole and requested placement in a halfway house in the Pittsburgh area. In May 2016, the Pennsylvania Department of Corrections denied his request for placement in that area in part because the halfway houses there could not accommodate his blindness. In February 2017, the Department of Corrections offered Decker admission to a personal care home in Philadelphia, which he rejected. He moved to a halfway house in Harrisburg in October 2022 and later transferred to a halfway house in York.

Decker initiated this suit on June 30, 2023, claiming that for the previous two years, he was wrongfully denied placement in a specific halfway house in Pittsburgh – even though he does not allege that he repeated his request for placement in the Pittsburgh area during that time. In response to the Department of Corrections' motion and later cross motions for reconsideration, the District Court dismissed Decker's suit. In my view, the Majority Opinion correctly upholds the District Court's denial of Decker's claims for violations of equal protection and the Rehabilitation Act, *see* 29 U.S.C. § 794, but it errs in vacating the dismissal of his Title II claim and in allowing Decker to pursue compensatory damages.

A necessary component of a claim under Title II of the Americans with Disabilities Act is the denial of the "*benefits* of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. In the context of Title II claims by prisoners, the Supreme Court has required that the claimed benefit be tied to the services, programs, and activities *provided*

by the prison. *See Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998) ("Modern prisons *provide* inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." (emphasis added)). But the *location* of a halfway house is not a service, program, or activity *provided* to a parolee. Hence, a halfway house's location is not a 'benefit' subject to protection under Title II, and without alleging a benefit that he was denied, Decker should not be viewed as stating a plausible Title II claim.

As to his request for compensatory damages, Decker did not challenge the dismissal of that relief in his opening appellate brief. His failure to do so would ordinarily result in the forfeiture of any such argument. *See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 124 n.2 (3d Cir. 2020). Decker did argue for compensatory damages in his reply brief, but that alone cannot overcome forfeiture because there must also be "exceptional circumstances." *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017). This case does not present an exceptional circumstance. To the contrary, neither "the public interest" nor the avoidance of "manifest injustice" requires an opportunity for a disabled sex offender to seek compensatory damages based on his non-placement in the halfway house of his choosing. *Id.* (quoting *United States v. Anthony Dell'Aquilla, Enters. & Subsidiaries*, 150 F.3d 329, 335 (3d Cir. 1998)). Decker's claim for compensatory damages should, therefore, be viewed as forfeited.

For these reasons, I would affirm the judgment of the District Court dismissing all of Decker's claims, and I respectfully dissent.